## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| **TOWER COMMUNICATIONS EXPERT, LLC,** | ) ) ) | |
| **Plaintiff,** | ) ) | **No. 18 C 2903** |
| **v.** | ) ) | **Chief Judge Rubén Castillo** |
| **TSC CONSTRUCTION, LLC et al.,** | ) ) ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Tower Communications Expert, LLC ("Plaintiff") filed this action against TSC Construction, LLC ("TSC"), Gary Juknevicius ("Juknevicius"), Ruslan Tulegenov ("Tulegenov"), and Nurlan Kosmaiylov ("Kosmaiylov," collectively, the "Defendants"), alleging that they violated the federal Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836 *et seq.*, the Illinois Trade Secrets Act ("ITSA"), 765 ILL. COMP. STAT. 1065/1 *et seq.*, and that they committed several business torts under Illinois law. (R. 1, Compl. ¶¶ 35-77.) Juknevicius and Tulegenov filed a joint motion to dismiss Plaintiff's complaint pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), and TSC filed a separate motion to dismiss pursuant to the same rules. (R. 16-1, Individual Defs.' Mot.; R. 19, TSC's Mot.) Both motions argue that Plaintiff fails to state a claim and that the Court lacks personal jurisdiction over Defendants. (R. 16-1, Individual Defs.' Mot. at 1-3; R. 19, TSC's Mot. at 1-3.) For the reasons stated below, both motions to dismiss are granted.

### BACKGROUND

Plaintiff alleges that it is "a Nevada limited liability company" with its principal place of business in DuPage County, Illinois. (R. 1, Compl. ¶ 3.) Defendant TSC is alleged to be "a New

York limited liability company" with its principal place of business in Johnson City, New York. (*Id.* ¶ 4.) Plaintiff alleges that TSC operates in the Chicago area through its agent, Antal Andrin ("Andrin"), and that TSC is registered to do business in Illinois. (*Id.*; R. 22, Greenan Decl. at 1.) TSC, however, has no offices or other facilities in Illinois. (R. 22, Greenan Decl. at 1.) As for the other Defendants, Plaintiff alleges that Juknevicius is a North Carolina resident, that Tulegenov is a Virginia resident, and that Kosmaiylov is a Texas resident. (R. 1, Compl. ¶¶ 5-7.)

Plaintiff and TSC are companies that compete for construction contracts to build and repair wireless communication infrastructure such as telecommunication towers. (*Id.* ¶¶ 1-2, 10.) In 2017, both companies were working on the same construction project in North and South Carolina, and during this project, TSC allegedly "poached [Plaintiff's] employees and subcontractors, encouraged them to obtain and disclose [Plaintiff's] confidential information and trade secrets, and encouraged them to solicit additional subcontractors and employees of [Plaintiff]." (*Id.* ¶ 2.)

Juknevicius and Tulegenov were Plaintiff's employees until April 8 and May 1, 2017, respectively. (*Id.* ¶ 25.) Juknevicius was later hired by TSC as a project manager to help TSC establish an office in North Carolina. (R. 16-2, Juknevicius Aff. at 2.) He started working for TSC on May 1, 2017. (*Id.*) Like Juknevicius, Tulegenov also allegedly began working for TSC shortly after his employment with Plaintiff ended. (R. 1, Compl. ¶ 6.)

Juknevicius' and Tulegenov's employment agreements with Plaintiff provided that they could not work for any company working on the same project as Plaintiff for a period of six months after their employment ended. (*Id.* ¶¶ 17-18; R. 1-2, Juknevicius Emp't Agreement at 2; R. 1-3, Tulegenov Emp't Agreement at 1.) The agreements also had a provision that prohibited them from soliciting Plaintiff's employees for a year after the end of their employment, and they

also had confidentiality provisions that prevented Juknevicius and Tulegenov from disclosing Plaintiff's confidential information to a competitor without Plaintiff's authorization. (R. 1, Compl. ¶¶ 19-20; R. 1-2, Juknevicius Emp't Agreement at 2; R. 1-3, Tulegenov Emp't Agreement at 1-2.) In addition, both employment agreements provided that "[a]ll controversies or claims arising out of or relating to this agreement . . . shall be decided in . . . arbitration," which will "take place in DuPage County, [Illinois]" and that "[t]he Arbitration will be governed by the laws of the state of Illinois."[1] (R. 1-2, Juknevicius Emp't Agreement at 6; R. 1-3, Tulegenov Emp't Agreement at 4.)

Kosmaiylov was Plaintiff's subcontractor until May 5, 2017. (R. 1, Compl. ¶ 25.) Like Juknevicius' and Tulegenov's employment agreements, the subcontractor agreement with Kosmaiylov contained confidentiality, non-solicitation, and non-compete provisions. (*Id.* ¶ 23; R. 1-4, Subcontractor Agreement at 2-3.) The non-compete provision prohibited Kosmaiylov from working for any company involved with the same project as Plaintiff for a period of six months after the subcontractor agreement ended, and the non-solicitation provision prohibited him from recruiting Plaintiff's contractors and employees for a period of 18 months after the subcontractor agreement ended. (R. 1-4, Subcontractor Agreement at 3.) While they worked for Plaintiff, Kosmaiylov, Juknevicius, and Tulegenov were allegedly "privy to specialized, confidential information about [Plaintiff's] business; including information about [Plaintiff's customers[,] suppliers[,] [] staffing[,] and budgeting projects." (R. 1, Compl. ¶ 24.)

Plaintiff claims that Juknevicius, Tulegenov, and Kosmaiylov left Plaintiff to work for TSC within six months after they had stopped working for Plaintiff, began recruiting Plaintiff's employees to work for TSC, and shared Plaintiff's confidential information with TSC. (*Id.* ¶ 25.)

---

[1] None of the parties in this case, however, have moved to compel arbitration.

Plaintiff asserts that Defendants carried out their efforts to "poach" Plaintiff's employees and obtain Plaintiff's confidential information through Andrin, who Plaintiff alleges was TSC's "agent." (*Id.* ¶¶ 15, 27-28.) As part of this effort, Juknevicius allegedly asked Andrin to send him Plaintiff's confidential files and recruited Plaintiff's employees to leave Plaintiff and join TSC. (*Id.* ¶¶ 27-30.)

TSC has not brought any lawsuit in Illinois, nor does it own any property or bank accounts in Illinois. (R. 22, Greenan Decl. at 1.) TSC does not regularly provide or distribute any goods or services in Illinois. (*Id.* at 2.) TSC's marketing does not target Illinois residents, and, during the time implicated by the complaint, TSC had no employee that was an Illinois resident. (*Id.*) During the same time period, TSC had worked on a total of 1,499 cellular towers, and nine of those towers were located in Illinois. (*Id.*) The last time TSC installed equipment on a cellular tower in Illinois was in July 2017. (*Id.*) During 2017, TSC's revenue from projects in Illinois comprised 0.8% of its national revenue. (*Id.*) The project in North and South Carolina that is the subject of the complaint is not related to any of TSC's projects in Illinois. (*Id.*) TSC's executive vice president states in a declaration that Andrin "is not and has never been employed in any capacity by TSC," and that Andrin "is not and has never been TSC's agent." (*Id.*) He further states that, to the best of his knowledge, Andrin was Plaintiff's employee at all times relevant to the allegations in the complaint. (*Id.*) Juknevicius has also submitted an affidavit attesting that Andrin is not and never has been TSC's employee or agent, and that Andrin is employed with Plaintiff in the position of "Safety Director." (R. 16-2, Juknevicius Aff. at 2.)

Juknevicius, Tulegenov, and Kosmaiylov did not work on any TSC project in Illinois. (R. 22, Greenan Decl. at 2.) Juknevicius has not lived in Illinois or owned real property in Illinois since March 2015, and he does not have any "offices, statutory agents, telephone listings,

or mailing addresses" in Illinois. (R. 16-2, Juknevicius Aff. at 1.) Tulegenov has not lived in Illinois since February 2013 and owns no real property in Illinois. (R. 16-3, Tulegenov Aff. at 1.) Like Juknevicius, Tulegenov does not have any offices, "statutory agents," telephone listings, or mailing addresses in Illinois. (*Id.*) Neither Juknevicius nor Tulegenov have any bank accounts, "licenses[,] or other operations" in Illinois, and they have not "generate[d] any revenues from" Illinois. (R. 16-2, Juknevicius Aff. at 2; R. 16-3, Tulegenov Aff. at 1-2.) Juknevicius has not paid income tax in Illinois since 2015, and Tulegenov has never paid income tax in Illinois. (R. 16-2, Juknevicius Aff. at 2; R. 16-3, Tulegenov Aff. at 2.) A vice president of Plaintiff, however, has submitted a declaration stating that Andrin sent "files" to Juknevicius that were stored on a computer located in Illinois. (R. 27-1, Malkani Decl. at 1.)

## PROCEDURAL HISTORY

On April 24, 2018, Plaintiff filed its complaint. (R. 1, Compl.) Plaintiff brings six counts: a count against Juknevicius, Tulegenov, and Kosmaiylov for breach of the non-compete, non-solicitation, and confidentiality provisions in their contracts with Plaintiff (Count I); a count against TSC for tortious interference with Plaintiff's contractual relationships (Count II); a count for "unlawful competition" against TSC (Count III); violation of the DTSA and ITSA against all Defendants (Counts IV and V); and a count for constructive fraud against all Defendants (Count VI). (*Id.* ¶¶ 35-77.) Plaintiff served Juknevicius with the complaint on April 30, 2018, and it left a copy of the complaint with a "co-resident" at Tulegenov's home on June 1, 2018. (R. 6, Reynolds Aff.; R. 13, Sircom Aff.) Plaintiff served the complaint on TSC's chief executive officer on April 27, 2018. (R. 5, Harrington Aff.) Plaintiff, however, has not filed with the Court any proof of service as to Kosmaiylov, and no attorney has appeared in this case on Kosmaiylov's behalf. Additionally, Juknevicius and Tulegenov represent that Plaintiff has yet to

serve Kosmaiylov, and Plaintiff does not rebut this statement in its filings. (R. 16-4, Individual Defs.' Mem. at 1 n.1; R. 28, Resp. to Individual Defs.)

On July 2, 2018, Juknevicius and Tulegenov filed a joint motion to dismiss, and TSC filed a separate motion to dismiss on the same day. (R. 16-1, Individual Defs.' Mot.; R. 19, TSC's Mot.) Juknevicius and Tulegenov argue that they do not have sufficient contacts with Illinois for the Court to exercise personal jurisdiction over them pursuant to Illinois' long-arm statute. (R. 16-4, Individual Defs.' Mem. at 2-7.) They further argue that Plaintiff fails to state a breach of contract claim because the restrictive covenants at issue are not supported by adequate consideration and are therefore unenforceable. (*Id.* at 7-8.) With respect to Plaintiff's federal and state law trade secret claims, Juknevicius and Tulegenov contend that those claims must be dismissed because Plaintiff does not identify the precise trade secret that was misappropriated or that it reasonably protects the secrecy of its confidential information. (*Id.* at 8-11.) Juknevicius and Tulegenov maintain that the Court should dismiss Plaintiff's constructive fraud claim because Plaintiff fails to allege any fiduciary duty or benefit conferred upon them from any alleged fraud. (*Id.* at 11-12.) Finally, they argue that Plaintiff is not entitled to any injunctive relief as a matter of law because the restrictive covenants at issue have expired, which renders moot any request for injunctive relief based on those covenants. (*Id.* at 12.)

Like Juknevicius and Tulegenov, TSC argues that the Court lacks personal jurisdiction over it pursuant to Illinois' long-arm statute. (R. 19-1, TSC's Mem. at 2-7.) More specifically, TSC argues that it lacks sufficient contacts with Illinois to subject it to general personal jurisdiction or specific personal jurisdiction because TSC has a negligible presence in Illinois and none of its activities were directed towards anyone in Illinois. (*Id.* at 6-7.)

TSC also contends that Plaintiff fails to state any cognizable claim. (*Id.* at 7-21.) First, TSC argues that Plaintiff's tortious interference claim fails because Plaintiff's restrictive covenants are unenforceable, and because Plaintiff fails to sufficiently allege any of the elements for tortious interference under Illinois law. (*Id.* at 8-14.) Next, TSC maintains that the Court should dismiss Plaintiff's "unlawful competition" claim because that claim is nothing more than a tortious interference claim, which Plaintiff fails to adequately plead. (*Id.* at 14-15.) Additionally, like Juknevicius and Tulegenov, TSC argues that Plaintiff's request for injunctive relief is moot, and that Plaintiff fails to plead enough facts that give rise to a plausible claim under the DTSA and ITSA. (*Id.* at 15-18, 20-21.) Finally, TSC asserts that Plaintiff's constructive fraud claim is subject to dismissal because it is preempted by the ITSA. (*Id.* at 18-20.) TSC also argues that the Court should dismiss this claim because the restrictive covenants at issue are unenforceable; accordingly, no fiduciary duty could have been breached that might give rise to a constructive fraud claim. (*Id.*)

Plaintiff filed separate responses to both motions to dismiss. (R. 27, Resp. to TSC; R. 28, Resp. to Individual Defs.) In response to Juknevicius' and Tulegenov's motion, Plaintiff argues that the Court has personal jurisdiction over Juknevicius and Tulegenov because they caused an injury in Illinois and were subject to employment "contracts governed by Illinois law with an Illinois company[.]" (R. 28, Resp. to Individual Defs. at 2-3.) Plaintiff also maintains that it pleads enough facts for its claims against Juknevicius and Tulegenov to survive a motion to dismiss for failure to state a claim. (*Id.* at 3-8.)

In response to TSC's motion, Plaintiff argues that the Court has personal jurisdiction over TSC because TSC knew that Plaintiff was "an Illinois-based company," and therefore TSC knew that any injury to Plaintiff would occur in Illinois. (R. 27, Resp. to TSC at 2-3.) Plaintiff also

contends that jurisdiction over TSC is proper because Plaintiff alleges that TSC perpetrated its scheme to solicit Plaintiff's employees through Andrin, who resides in Illinois and sent Juknevicius "files" that were stored on a computer in Illinois (*Id.* at 3.) Plaintiff argues that Andrin acted as TSC's agent, which is demonstrated by text messages from Andrin to Juknevicius that are attached to the complaint; therefore, Andrin's contacts with Illinois are imputed to TSC and are enough for the Court to exercise personal jurisdiction over TSC. (*Id.* at 3-5.) Finally, as to TSC's arguments that the complaint fails to state a claim, Plaintiff argues that it has plausibly alleged all the claims it brings against TSC. (*Id.* at 5-16.)

## LEGAL STANDARD

Turning first to Defendants' motions to dismiss pursuant to Rule 12(b)(2), a motion to dismiss under that rule tests whether the Court has personal jurisdiction over a defendant. FED. R. CIV. P. 12(b)(2). "Once a defendant has moved for a dismissal based on the lack of personal jurisdiction, the plaintiff bears the burden of demonstrating the existence of jurisdiction." *Kipp v. Ski Enter. Corp. of Wisc.*, 783 F.3d 695, 697 (7th Cir. 2015) (citation and internal quotation marks omitted). An evidentiary hearing is required if facts material to a determination of personal jurisdiction are in dispute.[2] *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002); *see also Fuchs v. Menard, Inc.*, No. 17-CV-01752, 2017 WL 4339821, at *2 (N.D. Ill. Sept. 29, 2017) (deciding 12(b)(2) motion without an evidentiary hearing because "no facts that are necessary to decide the issue were in dispute and neither side requested an evidentiary hearing"). "Where, as here, the district court rules on a defendant's motion to dismiss based on the submission of written materials without holding an evidentiary hearing, the plaintiff need

---

[2] Neither party has requested an evidentiary hearing.

only make out a *prima facie* case of personal jurisdiction." *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014) (citation and internal quotation marks omitted).

The parties may submit affidavits to support their arguments for personal jurisdiction, and "once the defendant has submitted affidavits or other evidence in opposition to the exercise of jurisdiction, the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 783 (7th Cir. 2003); *see also Telemedicine Sols. LLC v. WoundRight Techs., LLC*, 27 F. Supp. 3d 883, 892 (N.D. Ill. 2014) (observing that, once the defendant submits affidavits or other evidence showing a lack of personal jurisdiction, the plaintiff may not "merely rest on the allegations in its . . . complaint"). The Court accepts as true "any facts contained in the defendant's affidavits that remain unrefuted by the plaintiff." *GCIU-Employer Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1020 n.1 (7th Cir. 2009). The Court, however, also accepts as true "all well-pleaded facts alleged in the complaint and resolve[s] any factual disputes in the affidavits in favor of the plaintiff." *Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012).

Defendants also move to dismiss under Rule 12(b)(6), and to survive a motion to dismiss under Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. In deciding a motion to dismiss under Rule 12(b)(6), the Court must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Kubiak v. City of Chicago*, 810 F.3d 476, 480-81 (7th Cir. 2016). The Court can consider the complaint itself, "documents that are attached to the

complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

## ANALYSIS

### I.  Personal Jurisdiction

#### A.  Juknevicius and Tulegenov

Plaintiff argues that the Court has specific personal jurisdiction over Juknevicius, a North Carolina resident, and Tulegenov, a Virginia resident.[3] (R. 28, Resp. to Individual Defs. at 2-3.) In a federal question case such as this one, *see* 28 U.S.C. § 1331, "a federal court has personal jurisdiction over the defendant if either federal law or the law of the state in which the court sits authorizes service of process to that defendant." *Mobile Anesthesiologists Chi., LLC v. Anesthesia Assocs. of Hous. Metroplex, P.A.*, 623 F.3d 440, 443 (7th Cir. 2010). The DTSA does not expressly authorize service of process on out-of-state defendants like Juknevicius and Tulegenov. *See* 18 U.S.C. §§ 1831-39; *Mission Measurement Corp. v. Blackbaud, Inc.*, 287 F. Supp. 3d 691, 706 (N.D. Ill. 2017) ("The [DTSA] does not have nationwide service of process that would confer personal jurisdiction over all Defendants, therefore, the Court may exercise personal jurisdiction over Defendants only if personal jurisdiction would be proper in an Illinois court."). Accordingly, the Court may only exercise personal jurisdiction if the requirements for personal jurisdiction under Illinois' long-arm statute and the U.S Constitution are satisfied.

---

[3] Plaintiff does not dispute or otherwise respond to Juknevicius' and Tulegenov's assertion that the Court lacks general jurisdiction and instead maintains that the Court has specific personal jurisdiction. (*See* R. 16-4, Individual Defs.' Mem. at 4-5; R. 28, Resp. to Individual Defs. at 2-3.) Plaintiff, therefore, has not satisfied its burden to establish general jurisdiction over Juknevicius and Tulegenov. *See Kipp v. Ski Enter. Corp. of Wisc.*, 783 F.3d 695, 697 (7th Cir. 2015) (noting that, once personal jurisdiction is challenged by way of motion to dismiss pursuant to Rule 12(b)(2), the plaintiff bears the burden of demonstrating personal jurisdiction over the defendants).

*Mobile Anesthesiologists Chi., LLC*, 623 F.3d at 443. The Illinois long-arm statute, 735 ILL. COMP. STAT. 5/2-209(c), "permits the court to exercise jurisdiction to the full extent permitted by the Due Process Clause of the Fourteenth Amendment." *Brook v. McCormley*, 873 F.3d 549, 552 (7th Cir. 2017). "Thus, the state statutory and federal constitutional requirements merge." *Id.*

For the Court to exercise specific personal jurisdiction over Defendants, the Court must "determine whether [they have] sufficient minimum contacts" with Illinois "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "[T]he contacts supporting specific jurisdiction can take many different forms." *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 426 (7th Cir. 2010). Specific jurisdiction is "case-linked," *Bristol-Myers Squibb Co. v. Superior Court of Cal., S.F. Cty.*, 137 S. Ct. 1773, 1785 (2017); thus, contacts supporting personal jurisdiction must "be directly related to the conduct pertaining to the claims asserted." *Brook*, 873 F.3d at 552. Specific jurisdiction consists of "three essential requirements: (1) the defendant must have purposefully availed himself of the privilege of conducting business in the forum state or purposefully directed his activities at the state; (2) the alleged injury must have arisen from the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with traditional notions of fair play and substantial justice." *Felland*, 682 F.3d at 673 (internal citations omitted).

Plaintiff brings both tort and contract claims against Juknevicius and Tulegenov. (R. 1, Compl. ¶¶ 35-40, 55-77.) Courts applying the above personal jurisdiction analysis look to different factors in contract and tort cases to determine whether a defendant has sufficient contacts with the forum state to exercise personal jurisdiction. *Felland*, 682 F.3d at 674 ("[T]he tort-vs.-contract distinction is highly significant to the personal-jurisdiction analysis."). In

contract cases, "a contract between a state resident and an out-of-state defendant alone does not automatically establish sufficient minimum contacts." *Citadel Grp. Ltd. v. Wash. Reg'l Med. Ctr.*, 536 F.3d 757, 761 (7th Cir. 2008). Instead, the Court must consider the parties' "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" to determine whether Juknevicius and Tulegenov have sufficient minimum contacts with Illinois. *Id.* When analyzing personal jurisdiction over parties who have allegedly committed a tort, courts will look to whether plaintiff has shown "(1) intentional conduct (or 'intentional and allegedly tortious' conduct); (2) expressly aimed at the forum state; (3) with the defendant's knowledge that the effects would be felt—that is, the plaintiff would be injured—in the forum state." *Tamburo v. Dworkin*, 601 F.3d 693, 703 (7th Cir. 2010); *see also Guaranteed Rate, Inc. v. Conn*, 264 F. Supp. 3d 909, 916-17 (N.D. Ill. 2017) (analyzing personal jurisdiction over defendant related to alleged tort claims under the same rubric).

First, Plaintiff argues that the Court has personal jurisdiction over Juknevicius and Tulegenov because "both of them were under contracts governed by Illinois law with an Illinois company (TCE) when they jumped ship."[4] (R. 28, Resp. to Individual Defs. at 3.) This argument, however, does not directly address whether Juknevicius and Tulegenov purposefully availed themselves of the privilege of conducting business in Illinois, which looks at factors related to the parties' negotiations, course of dealing, and contemplated future consequences such as "who

---

[4] Plaintiff, however, does not point to any provision in Juknevicius' or Tulegenov's contracts that unambiguously selects Illinois law as the law governing the parties' agreements, and the Court cannot find any such clause in the employment contracts attached as exhibits to the complaint. (*See* R. 1-2, Juknevicius Emp't Agreement at 1-6; R. 1-3, Tulegenov Emp't Agreement at 1-4.) The employment contracts instead provide that, in any arbitration between the parties, "[t]he Arbitration will be governed by the laws of the state of Illinois," (R. 1-2, Juknevicius Emp't Agreement at 6; R. 1-3, Tulegenov Emp't Agreement at 4), but nowhere do they provide that the *contracts* are governed by Illinois law.

initiated the transaction;" "where the contract was negotiated;" "where the contract was formed;" and "where performance of the contract was to take place." *Philos Techs., Inc. v. Philos & D, Inc.*, 802 F.3d 905, 913 (7th Cir. 2015).

The project at issue in this case was in North and South Carolina, (R. 1, Compl. ¶¶ 13-14, 16), and Plaintiff offers no evidence that any negotiations, contract formation, future consequences related to the employment contracts, performance of the employment contracts, or any course of dealing took place in Illinois. *See Citadel Grp. Ltd.*, 536 F.3d at 761. On the other hand, Defendant offers undisputed evidence that Juknevicius and Tulegenov have not lived in Illinois for many years, (R. 16-2, Juknevicius Aff. at 1; R. 16-3, Tulegenov Aff. at 1), and therefore that their employment agreements were not performed in Illinois. This case involves Defendants and a project located outside of Illinois such that Juknevicius and Tulegenov did not "purposefully avail" themselves "of the privilege of conducting business in Illinois." *See Grain Mktg., LLC*, 743 F.3d at 492, 496 (dismissing defendant for lack of personal jurisdiction due to insufficient contacts with Illinois where the defendant's contractual "duty was to grow his grain on his Wisconsin farm and deliver it to a Wisconsin grain elevator"). The Court, therefore, concludes that Plaintiff fails to satisfy its burden to establish personal jurisdiction over Juknevicius and Tulegenov for purposes of its breach of contract claims. *See 1st Bank Card Servs., Inc. v. Patel*, No. 17-CV-8744, 2018 WL 3608545, at *4 (N.D. Ill. July 27, 2018) (dismissing case for lack of personal jurisdiction because "Defendants performed all of their work under the Agreements in New York," there was "no evidence of any payments, telephone calls, or communications being made to Illinois," and "[a]lthough the Agreements contain[ed] Illinois choice of law clauses, they [did] not contain any clauses in which the parties agree[d] to have their disputes resolved by courts located in Illinois"); *Zep, Inc. v. First Aid Corp.*, No. 09

CV 1973, 2010 WL 1195094, at *4 (N.D. Ill. Mar. 19, 2010) (dismissing for lack of personal

jurisdiction a case involving alleged breach of nondisclosure, non-solicitation, and noncompete

provisions in an employment contract because the plaintiff "never allege[d] that any part of the

dealings related to Defendants' agreements to return materials or non-disclosure, nonsolicitation,

non-recruitment, and non-compete covenants occurred in Illinois").

   Next, Plaintiff argues that its tort allegations provide the Court with personal jurisdiction

over Juknevicius and Tulegenov because: (1) "they committed deliberate torts that they knew

would cause injury in Illinois;" (2) they utilized an "Illinois agent" in their alleged tortious

scheme, Andrin, who "sent Tulegenov's files to Juknevicius;" and (3) "files that Andrin sent . . .

were stored on a computer in Illinois." (R. 28, Resp. to Individual Defs. at 3.) The Court,

however, cannot give any weight to Plaintiff's argument that Andrin was Defendants' agent

because Defendants submit uncontroverted affidavits attesting that Andrin was Plaintiff's

employee and agent, (R. 22, Greenan Decl. at 2; R. 16-2, Juknevicius Aff. at 2), and Plaintiff

offers no evidence to rebut these affidavits.[5] The Court, therefore, accepts as true that Andrin

was Plaintiff's employee and agent. *See GCIU-Employer Ret. Fund*, 565 F.3d at 1020 n.1;

*Centurion Serv. Grp., LLC v. SBMC Healthcare*, LLC, 944 F. Supp. 2d 617, 622 (N.D. Ill. 2013)

("Plaintiff did not offer any affidavits or other evidence to contradict the contents of Defendants'

affidavits. The Court, therefore, accepts as true any facts contained in the Defendant's affidavits

or proffered evidence that Plaintiff does not refute."). In light of this conclusion, the Court rejects

Plaintiff's argument that Andrin's Illinois contacts are imputed to the Defendants because Andrin

---

[5] Plaintiff, at one point in its response, embraces the fact that Andrin was an agent of *Plaintiff*, not
*Defendants*. (*See* R. 27, Resp. to TSC at 5 ("If anything, the fact that Andrin was an employee of
[Plaintiff] when TSC relied on him for its scheme weighs in favor of this Court's jurisdiction over
TSC.").)

was Juknevicius' or TSC's agent. (*See* R. 27, Resp. to TSC at 2-5; R. 28, Resp. to Individual Defs. at 2-3.)

Plaintiff's remaining arguments in support of personal jurisdiction are not persuasive to establish that Juknevicius' and Tulegenov's conduct "was purposefully directed" at Illinois such that the Court may exercise personal jurisdiction over them. *See Felland*, 682 F.3d at 674 (citation omitted). From the U.S. Supreme Court's jurisprudence on personal jurisdiction, the United States Court of Appeals for the Seventh Circuit has distilled three requirements for determining whether a defendant's tortious conduct was "purposefully directed" at Illinois: "(1) intentional conduct (or 'intentional and allegedly tortious' conduct); (2) expressly aimed at the forum state; (3) with the defendant's knowledge that the effects would be felt—that is, the plaintiff would be injured—in the forum state." *Id.* at 674-75.

Plaintiff argues that it suffered an injury in Illinois because it is an "Illinois company." (R. 28, Resp. to Individual Defs. at 3). Standing alone, the fact that Plaintiff suffered injury in Illinois, however, is insufficient to demonstrate minimum contacts. *MG Design Assocs., Corp. v. Costar Realty Info., Inc.*, 224 F. Supp. 3d 621, 631-32 (N.D. Ill. 2016); *see also Walden v. Fiore*, 571 U.S. 277, 290 (2014) ("The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way."). Plaintiff offers no evidence showing that the conduct alleged in the complaint took place in or affected Illinois, and the complaint is directed towards a project in the Carolinas and out-of-state employees. *See Guaranteed Rate, Inc.*, 264 F. Supp. 3d at 921 (dismissing personal jurisdiction because all of the defendant's "allegedly tortious activity took place outside of Illinois, where [he] lived and worked"). Additionally, Plaintiff does not provide evidence that Juknevicius or Tulegenov have "a substantial connection" with Illinois as opposed

to with North and South Carolina—the states where the construction project at issue was located. *Ariel Invs., LLC v. Ariel Capital Advisors LLC*, 881 F.3d 520, 522 (7th Cir. 2018); *see also Zep, Inc.*, 2010 WL 1195094, at *6 (dismissing misappropriation of trade secret case for lack of personal jurisdiction because the plaintiff "has not alleged that Defendants stole trade secrets kept in [the plaintiff's] Illinois offices or related to its Illinois sales or client base"). Rather, Plaintiff argues that it was foreseeable that an injury would occur in Illinois because Plaintiff is an Illinois company, but that fact is insufficient to establish personal jurisdiction. *See Monco v. Zoltek Corp.*, No. 17 C 6882, 2018 WL 4538728, at *4 (N.D. Ill. Sept. 21, 2018) ("[M]ere foreseeability of harm to plaintiffs who the defendant knows are based in Illinois is insufficient[.]"). The Court, therefore, finds that plaintiff's allegations and evidence do not support the exercise of personal jurisdiction over Juknevicius and Tulegenov.

Finally, although Plaintiff argues that personal jurisdiction over Juknevicius is proper because Andrin sent Juknevicius "files" stored on an Illinois computer, (R. 27-1, Malkani Decl. at 1), this fact is not enough on its own to confer jurisdiction over Juknevicius because Plaintiff has not alleged or demonstrated that these "files" contain information that is implicated by Plaintiff's tort claims.[6] *See Brook*, 873 F.3d at 552 (explaining that contacts supporting personal jurisdiction must "be directly related to the conduct pertaining to the claims asserted"); *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 801 (7th Cir. 2014)

---

[6] Instead, a representative of Plaintiff declares that "[t]he files that Antal Andrin sent to Juknevicius were stored on a computer in Illinois" without specifying whether those "files" were confidential information or information that is referenced in the complaint. (R. 27-1, Malkani Decl. at 1.) These "files" do not reasonably appear to be the same information referred to in the complaint, because that information was allegedly sent by Andrin through a smartphone and not a computer. (R. 1, Compl. ¶¶ 28-29, 58.) Regardless, Plaintiff does not dispute Juknevicius' affidavit, which attests that the files referenced in the complaint were "employee safety training certificates" for three employees that never worked for TSC. (R. 16-2, Juknevicius Aff. at 2.) Therefore, these files are not relevant to Plaintiff's tort claims based on TSC's alleged "poaching" of Plaintiff's employees. *See Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 801 (7th Cir. 2014) ("The relevant contacts are those that center on the relations among the defendant, the forum, and the litigation.").

("The relevant contacts are those that center on the relations among the defendant, the forum, and the litigation."). The confidential information referenced in the complaint relates to a project in the Carolinas, and Plaintiff does not refute that Plaintiff's former employees and subcontractors working on that project were located outside of Illinois. (R. 1, Compl. ¶¶ 13-14, 16; R. 22, Greenan Decl. at 2.) Thus, while Plaintiff alleges that Defendants injured an Illinois company and used an Illinois company's information and employees for its advantage on an out-of-state project, this is not enough to establish personal jurisdiction because virtually all of the relevant conduct and contacts alleged in the complaint relate to the Carolinas and not Illinois. *See Labtest Int'l, Inc. v. Ctr. Testing Int'l Corp*, 766 F. Supp. 2d 854, 864 (N.D. Ill. 2011) ("[I]t is the activity of the defendant, and not the status of the plaintiff, that determines whether jurisdiction is proper[.]"); *see also Walden*, 571 U.S. at 290.

Ultimately, Plaintiff has failed to carry its burden to show conduct "purposefully directed" at Illinois, *Felland*, 682 F.3d at 674-75, or that either Defendant has a "substantial connection" with Illinois, *Ariel*, 881 F.3d at 522. Instead, Plaintiff alleges conduct that occurred almost exclusively outside of Illinois that harmed its project and interests outside of Illinois. (R. 1, Compl. ¶¶ 13-14, 16.) The Court, therefore, concludes that Juknevicius and Tulegenov do not have enough contacts with Illinois for the Court to exercise personal jurisdiction over them. *See Telemedicine Sols. LLC*, 27 F. Supp. 3d at 900 (finding a lack of personal jurisdiction because "[n]one of Defendant's alleged contacts—its website, Facebook page, Twitter feed, and conference-based marketing efforts—was targeted or aimed at Illinois, or prompted any more than happenstance interactions with Illinois residents or businesses.").

Dismissal is also appropriate because exercising personal jurisdiction over Juknevicius and Tulegenov would "offend traditional notions of fair play and substantial justice." *Brook*, 873

F.3d at 552 (citation omitted). Considerations relevant to this analysis include "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985) (citation and internal quotation marks omitted).

Juknevicius and Tulegenov currently have no ties to Illinois, (R. 16-2, Juknevicius Aff. at 1; R. 16-3, Tulegenov Aff. at 1); therefore, the burden on them to litigate in Illinois would be significant. Additionally, because the project at issue was outside of Illinois and the employees TSC allegedly solicited were outside of Illinois, litigating the case in Illinois would not be efficient or in furtherance of Illinois' or the several states' interests. *See Labtest Int'l, Inc.*, 766 F. Supp. 2d at 864 (finding that exercising personal jurisdiction over the defendant would offend notions of fair play and substantial justice because the defendant's records, files, and witnesses regarding the tortious activity were not located in Illinois and because the tortious conduct occurred outside of Illinois). As out-of-state residents who had little or no ties to Illinois, (R. 16-2, Juknevicius Aff. at 1; R. 16-3, Tulegenov Aff. at 1), Juknevicius and Tulegenov also could not have reasonably anticipated being haled into an Illinois court; therefore, exercising personal jurisdiction over them would offend notions of fair play and substantial justice. *See Pierson*, 2016 WL 6093490, at *9 (exercising jurisdiction would offend notions of fair play and substantial justice because there was nothing "in the parties' submissions that demonstrates that these Defendants regularly conduct business in Illinois").

Plaintiff's cited legal authority is inapposite. Plaintiff relies primarily on *ABN AMRO, Inc. v. Capital Int'l Ltd.*, 595 F. Supp. 2d 805 (N.D. Ill. 2008) and *Russell v. SNFA*, 965 N.E.2d 1

(Ill. App. Ct. 2012). *ABN Ambro, Inc.* is not analogous because, unlike in that case, there is no

evidence or allegation that Plaintiff's injury occurred in Illinois or that Defendants solicited

Illinois residents like the plaintiff in *ABN AMRO, Inc. See ABN AMRO, Inc.*, 595 F. Supp. 2d at

828 ("Here, not only did the injury allegedly occur in Illinois, Plaintiff alleges that Capital,

Sarco, and Sarco's sales agents sought out ABN to solicit it to enter the deal. Those actions

constitute sufficient contacts with Illinois to warrant exercising personal jurisdiction over them in

a case based on those contacts."). This case is also unlike *Russell*, a case involving a helicopter

crash in Illinois, a tort that occurred in Illinois, and "activities directed toward the forum," 965

N.E.2d at 3, 9, because the allegations in the present complaint relate to torts being committed

and directed at the states where Juknevicius and Tulegenov lived and worked, which was outside

of Illinois. (R. 1, Compl. ¶¶ 13-14, 16; R. 16-2, Juknevicius Aff. at 1; R. 16-3, Tulegenov Aff. at

1; R. 28, Resp. to TSC at 1 (arguing that Defendants allegedly initiated a "campaign" to raid

Plaintiff's employees because those employees were more familiar with the project in the

Carolinas).) Accordingly, the Court lacks personal jurisdiction over Juknevicius and Tulegenov,

and the claims against them are dismissed.

## B.    TSC

With respect to TSC, Plaintiff repeats many of the arguments that it made for the

assertion of personal jurisdiction above, namely, that specific personal jurisdiction[7] over TSC is

proper because TSC: committed torts against "an Illinois company;" solicited employees and

subcontractors subject to agreements governed by Illinois law; carried out tortious conduct

through TSC's agent, Andrin, who resides in Illinois; and received Plaintiff's confidential files

---

[7] As with Juknevicius and Tulegenov, Plaintiff does not dispute TSC's assertion that the Court lacks general jurisdiction over it and hinges its personal jurisdiction argument on specific personal jurisdiction. (*See* R. 19-1, TSC's Mem. at 3-5; R. 27, Resp. to TSC at 2-5.) Plaintiff, therefore, has not satisfied its burden to establish general jurisdiction over TSC. *See Kipp*, 783 F.3d at 697.

from Andrin that were stored on a computer in Illinois. (R. 27, Resp. to TSC at 3.) Plaintiff does not allege that it had any agreement with TSC and asserts only tort claims against TSC, (R. 1, Compl. ¶¶ 35-77); accordingly, the Court looks at any evidence or allegations of a "substantial connection" between TSC and Illinois or tortious conduct expressly aimed at Illinois with TSC's knowledge "that the effects would be felt—that is, the plaintiff would be injured" in Illinois. *Ariel*, 881 F.3d at 522; *Tamburo*, 601 F.3d at 703.

For the reasons already stated above related to Plaintiff's failure to rebut Defendants' affidavits, the Court rejects the argument that Andrin acted as TSC's agent or "subagent." (*See* R. 27, Resp. to TSC at 2-3.) That Plaintiff is an "Illinois company," is likewise insufficient on its own to establish personal jurisdiction over TSC for its alleged tortious conduct. *See Walden*, 571 U.S. at 285 ("[T]he plaintiff cannot be the only link between the defendant and the forum."). Plaintiff's remaining arguments—that TSC allegedly received unspecified "files" from Plaintiff stored on an Illinois computer and solicited Plaintiff's employees and contractors that were subject to agreements governed by Illinois law—are based on contacts that are too attenuated for the Court to exercise personal jurisdiction over TSC.

As noted above, "[t]he relevant contacts are those that center on the relations among the defendant, the forum, and the litigation," and Plaintiff has not alleged or demonstrated that the "files" TSC received from an Illinois computer contained information that implicates Plaintiff's tort claims. (*See* R. 27-1, Malkani Decl. at 1.) In addition, that the files were located on an Illinois computer as opposed to a computer in another state concerns Plaintiff's conduct related to data storage rather than TSC's conduct, which is the relevant inquiry for personal jurisdiction. *See Walden*, 571 U.S. at 291 (observing that although "some of the cash seized in Georgia 'originated' in Nevada, . . . that attenuated connection was not created by petitioner"). Plaintiff

does allege, however, that Juknevicius received and requested Plaintiff's confidential information from Andrin through phone communications, but that confidential information is alleged to be connected to the project in the Carolinas. (R. 1, Compl. ¶¶ 13-30.) Thus, the confidential information relevant to this litigation that Andrin sent to TSC does not have a substantial connection to Illinois. *See Zep, Inc.*, 2010 WL 1195094, at *5.

That Plaintiff's employees and contractors had agreements with Plaintiff governed by Illinois law does not demonstrate that TSC "expressly aimed" its conduct at Illinois or committed torts in Illinois because the complaint relates to out-of-state employees and a project located in North and South Carolina. (R. 1, Compl. ¶¶ 13-14, 16; R. 22, Greenan Decl. at 2.) Nor is there evidence that Plaintiff's claims "arise directly out of" TSC's "contacts with Illinois," as opposed to the Carolinas. *Tamburo*, 601 F.3d at 709; *see also Zep, Inc.*, 2010 WL 1195094, at *5 (dismissing defendants for lack of personal jurisdiction based on misappropriation of trade secrets because the "complaint contains no allegations placing either the misappropriation or use of . . . trade secrets in Illinois"). Without such allegations or evidence, the Court cannot exercise specific personal jurisdiction over TSC. *See Tamburo*, 601 F.3d at 708 (declining to exercise jurisdiction over an Australian company because there "were no allegations that . . . anyone . . . associated with [the Australian company] acted . . .with the specific purpose of inflicting injury" in Illinois). Because Plaintiff fails to provide evidence of a substantial connection between TSC and Illinois, the Court must dismiss the claims against TSC for lack of personal jurisdiction. *See Ariel*, 881 F.3d at 522.

Plaintiff submits that TSC itself has put forth evidence establishing personal jurisdiction. (R. 27, Resp. to TSC at 3.) TSC's evidence shows that, during the time implicated by the complaint, TSC worked on a total of 1,499 cellular towers, and nine of those towers were in

Illinois. (R. 22, Greenan Decl. at 2.) The last time TSC installed equipment on a cellular tower in Illinois was in July 2017. (*Id.*) During 2017, TSC's revenue from projects in Illinois comprised 0.8% of its national revenue. (*Id.*) While TSC does have some contacts with Illinois, those contacts "must directly relate to the challenged conduct or transaction" for the Court to have personal jurisdiction over TSC. *N. Grain Mktg., LLC*, 743 F.3d at 492 (citation omitted); *see also Tamburo*, 601 F.3d at 702 ("To support an exercise of specific personal jurisdiction, the defendant's contacts with the forum state must directly relate to the challenged conduct or transaction; we therefore evaluate specific personal jurisdiction by reference to the particular conduct underlying the claims made in the lawsuit."). These contacts with Illinois are negligible compared to TSC's overall business and, more importantly, Plaintiff does not demonstrate how TSC's minimal contacts with Illinois directly relate to TSC's alleged solicitation of employees and use of trade secrets to gain a competitive advantage over Plaintiff on a construction project in the Carolinas. *See Tamburo*, 601 F.3d at 702. Accordingly, the Court does not find that TSC's contacts with Illinois are sufficient to defeat TSC's motion to dismiss.

Finally, Plaintiff argues that Juknevicius—TSC's employee—solicited Plaintiff's employees through Andrin—an Illinois resident; consequently, the Court may exercise personal jurisdiction over TSC. (R. 27, Resp. to TSC at 3-4.) While this contact is meaningful for purposes of the personal jurisdiction analysis, the Court finds that it is not enough to establish personal jurisdiction.

Plaintiff does not dispute that Juknevicius and TSC's other employees during the relevant period were residents of a state other than Illinois. (R. 22, Greenan Decl. at 2; R. 16-2, Juknevicius Aff. at 1.) As a result, all the alleged tortious conduct in this case involves TSC employees such as Juknevicius who lived outside of Illinois and the solicitation of non-Illinois

residents to work for TSC and divulge trade secrets related to a construction project outside of Illinois. (R. 1, Compl. ¶¶ 41-77; R. 27, Resp. to TSC at 1 ("TSC presumably ["raided" Plaintiff's employees] because . . . [Plainitff's] employees were familiar with the customer-contacts on the Carolina TMO Project").) Plaintiff's claims against TSC include: tortious interference with Plaintiff's employment and subcontractor agreements for out-of-state employees and subcontractors (Count II), "unlawful competition" against TSC related to a project in the Carolinas (Count III), misappropriation of trade secrets related to a project in the Carolinas (Counts IV and V), and constructive fraud as a result of Juknevicius' and Tulegenov's (both non-Illinois residents) disclosure of confidential information to TSC, an entity that is not from Illinois. (R. 1, Compl. ¶¶ 41-77.) Plaintiff also does not dispute that Juknevicius was hired by TSC to develop a North Carolina office for TSC. (R. 16-2, Juknevicius Aff. at 2.)

The Court, therefore, concludes that, based on the record and allegations as a whole, Juknevicius' contact with Andrin is not enough to exercise personal jurisdiction over TSC because it does not amount to a substantial connection with Illinois. *See Ariel*, 881 F.3d at 523 ("If trademark infringement happened, that wrong occurred in Florida, or perhaps some other state where people who wanted to do business with Ariel Investments ended up dealing with Ariel Capital because of the similar names. That state cannot be Illinois, where Ariel Capital lacks clients."); *Hang Glide USA, LLC v. Coastal Aviation Maint., LLC*, No. 16 C 6905, 2017 WL 1430617, at *3 (N.D. Ill. Apr. 18, 2017) ("And when as here a claimed injury is purely economic, the plaintiff must allege facts showing that the defendant intended to affect an Illinois interest, akin to the purposeful-availment requirement[.]"); *cf. TEKsystems, Inc. v. Modis, Inc.*, No. CIV.A. 08 C 5476, 2008 WL 5155667, at *3 (N.D. Ill. Dec. 5, 2008) ("Pelligrini solicited Lukas—an Illinois resident—to leave TEKsystems' Downers Grove, Illinois office to work for

Modis in its Illinois office. Lukas left TEKsystems to join Modis, Pelligrini could reasonably anticipate being haled into an Illinois court[.]").

Additionally, viewing the record as a whole, the Court concludes that exercising jurisdiction over TSC would offend traditional notions of fair play and substantial justice. *See Brook*, 873 F.3d at 552. The misconduct alleged by Plaintiff relates to a construction project in the Carolinas, and none of TSC's employees resided in Illinois during the incidents in question. (R. 1, Compl. ¶¶ 13-14, 16; R. 22, Greenan Decl. at 2.) This fact, combined with TSC's minimal contact with Illinois, leads the Court to conclude that TSC could not have reasonably anticipated being haled into court in Illinois based on its actions connected to a project in the Carolinas. *See Tamburo*, 601 F.3d at 701 ("[E]ach defendant must have purposely established minimum contacts with the forum state such that he or she should reasonably anticipate being haled into court there (citation and internal quotation marks omitted)). The burden on TSC to litigate this case in Illinois would be significant, and it would not be efficient or in the interest of Illinois or the several states' interests to have this case involving conduct that almost exclusively occurred outside of Illinois to be litigated in Illinois. *See Labtest Int'l, Inc.*, 766 F. Supp. 2d at 864; *Pierson*, 2016 WL 6093490, at *9; *cf. Horizon Matrix, LLC v. Whalehaven Capital Fund, Ltd.*, No. 11 C 2655, 2012 WL 379601, at *5 (N.D. Ill. Feb. 3, 2012) (noting that "Illinois does have a strong interest in providing a forum for its residents and local businesses to seek redress for tort injuries," but dismissing for lack of personal jurisdiction because "Defendants could not reasonably anticipate being haled into court" in Illinois). Accordingly, the Court grants TSC's motion to dismiss for lack of personal jurisdiction.

Because the pending motions to dismiss are granted for lack of personal jurisdiction, the Court does not reach the merits of Defendants' motions to dismiss for failure to state a claim

pursuant to Rule 12(b)(6). *See Burmaster v. Herman*, 737 F. App'x 790, 791 (7th Cir. 2018) ("Because the court lacked jurisdiction, it should not have gone on to consider whether Burmaster's complaint stated a claim[.]").

## II.  Plaintiff's Failure to Effect Service on Kosmaiylov

As noted above, Plaintiff filed its complaint on April 24, 2018, more than six months ago. (R. 1, Compl.) Plaintiff has not filed any proof that it effected service on Kosmaiylov, who has not yet appeared before the Court and is the remaining Defendant in this case. Plaintiff also does not refute Defendants' assertion that Kosmaiylov has not yet been served. (*See* R. 16-4, Individual Defs.' Mem. at 1 n.1; R. 28, Resp. to Individual Defs.) Federal Rule of Civil Procedure 4(m) provides that "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." FED. R. CIV. P. 4(m). Kosmaiylov has not been served for more than 90 days after the complaint was filed on April 24, 2018. (*See* R. 1, Compl.) The Court, therefore, pursuant to Rule 4(m), hereby dismisses defendant Kosmaiylov without prejudice.

## CONCLUSION

For the foregoing reasons, Juknevicius' and Tulegenov's motion to dismiss for lack of personal jurisdiction (R. 16-1) is GRANTED. TSC's motion to dismiss for lack of personal jurisdiction (R. 19) is also GRANTED. The claims against TSC, Juknevicius, Tulegenov, and Kosmaiylov are DISMISSED without prejudice to the filing of a complaint in an appropriate venue which has personal jurisdiction over the proposed defendants.

ENTERED: _____

**Chief Judge Rubén Castillo**
**United States District Court**

**Dated: October 30, 2018**

26